# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**JEFF SANTOS and SANTIAGO CADENAS on behalf of themselves and as representative of other class members similarly situated,**

        **PUTATIVE COLLECTIVE CLASS ACTION LAWSUIT**

          **Plaintiffs,**

**v.**

**ACTION NISSAN, INC., d/b/a UNIVERSAL NISSAN,**

          **Defendant.**

_____/

## COLLECTIVE ACTION COMPLAINT

The above-named individual Lead Plaintiffs bring this collective action lawsuit (individually and on behalf of others similarly situated) against Action Nissan, Inc., d/b/a Universal Nissan ("_Universal Nissan_"), and alleges, upon personal information and knowledge as to their own actions, their counsel's investigation and upon information and good faith belief as to all other matters, the following:

## I.    NATURE OF THIS ACTION

1.    Lead Plaintiffs, individually and on behalf of others similarly situated, file this lawsuit in response to Universal Nissan's pattern and practice of refusing to pay them wages lawfully earned in performing their job responsibilities, which includes paying each of them at the federal minimum wage standards, paying for overtime, failing to reimburse them for tools, and other materials purchased by them to perform their job responsibilities for their employer, among other violations of Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207 (the "*FLSA*").

2.    Lead Plaintiffs, like every individual that could opt to participate in this collective action, was not paid all compensation due him, including minimum wages, overtime wages, and other compensation lawfully due him, for multiple weeks during the statutory period, which is a direct violation of the FLSA.

## II.    PARTIES TO THIS LAWSUIT

1.    Lead Plaintiffs are individuals who maintain their personal residence in Orange County, Florida and worked for Universal Nissan in this District.

2.      Lead Plaintiffs and putative members of the FLSA collective are/were individuals employed as automotive mechanics and service technicians by Universal Nissan to perform traditional maintenance, repair, and warranty services for Universal Nissan customers within the last four (4) years.

3.      Lead Plaintiffs and each individual that would comprise the collective action members are or were nonexempt employees that received an IRS Form W2 for all wages earned as result of employment with Universal Nissan, and all were paid on an hourly basis, and were or currently are subject to Universal Nissan's unlawful compensation program referred to generally as "piece-rate" or "flat-rate" for services performed on behalf of Universal Nissan.

4.      Lead Plaintiffs and all members of the collective action were "employees" of Universal Nissan within the meaning of FLSA, 29 U.S.C. § 203(e)(1) during the requisite statutory period.

5.      Universal Nissan maintains its principal place of business and conducts its business within the jurisdiction boundaries of this District.

6.      Universal Nissan is an authorized dealership of Nissan North America, Inc., the manufacturer, and distributor of all Nissan motor vehicles throughout the United States of America.

7.     Universal Nissan provides, in addition to selling motor vehicles manufactured by Nissan North America, a variety of maintenance and repair services to motor vehicles owned by its customers, including warranty repair work under Nissan North America's nationwide warranty repair program.

8.     Universal Nissan was and continues to be an enterprise governed by the FLSA because it is engaged in commerce or the production of goods for commerce within the meaning of Section 3(s) of the FLSA because it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have moved in or were produced for commerce by any person. 29 U.S.C. § 203(s).   Universal Nissan's annual gross volume of business exceeded $500,000.00 (exclusive of taxes) each year during the requisite statutory period.

9.     Universal Nissan was and continues to be an "employer" within the meaning of FLSA 29 U.S.C. § 203(d) because it is a corporation acting directly in the interest of its associated agents/business partners—in relation to the employees at issue—the technicians, mechanics, and maintenance servicemen.

10.    Universal Nissan is directly responsible and liable for the acts and omissions alleged throughout this pleading and is liable to compensate Lead Plaintiffs and all potential members of the collective action for financial harm

due to its failure to compensate them for work performed on behalf of their employer.

## III.    JURISDICTION AND VENUE

11.    This Court has original subject jurisdiction under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*; such jurisdiction lies under 28 U.S.C. §§ 1331 and 1332.

12.    Venue is proper in this District under the provisions of 28 U.S.C. § 1391 because Universal Nissan maintains its principal place of business and conducts its business in this District.

## IV.    COLLECTIVE ACTION ALLEGATIONS

13.    Universal Nissan's employee compensation program (described in more detail later this this pleading) violates the Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207, for failure to pay minimum wages, overtime wages, wages for for all hours worked, or any combination of the foregoing.

14.    Pursuant to 29 U.S.C. §§ 206 and 207, Lead Plaintiffs and all others similarly situated, seek to prosecute their FLSA claims as a collective action on behalf of all mechanics, technicians, and/or maintenance personnel—together with Lead Plaintiffs, to be collectively referred to as "*the Collective Members*"—who are or were employed by Universal Nissan at any time from June 2018 to the entry of judgement in this case (the "*Collective Period*").

15.    A collective action is appropriate in this circumstance because the Lead Plaintiffs and the Collective Members are similarly situated in that 1) they were subjected to Universal Nissan's unlawful compensation program and policies that compensated them less than the federal minimum wage for all hours worked; 2) they were victim of Universal Nissan's failure to pay overtime wages; 3) they were forced to purchase large dollar amounts of tools which reduced their compensation below the requisite minimum wage; and 4) further acts of unlawful conduct described later in this pleading consistent with applicable law.

16.    Lead Plaintiffs' damages are substantially similar to other individuals that could elected to part of the Collective Members because each were 1) not paid wages at or above the federal minimum wage by Universal Nissan for all hours worked; 2) were victims of Universal Nissan's unlawful compensation program; 3) were forced to purchase expensive tools without reimbursement up to the point needed to satisfy the minimum wage requirement; 4) were not paid overtime wages for any hour worked in in excess of forty hours per week; plus 5) statutory liquidated damages as provided by federal law for Universal Nissan's failure to pay minimum wage compensation as required by the FLSA.

17.    The collection of similarly situated individuals or potential collective members (i.e., the "*Collective Members*") sought to be certified under 29 U.S.C. § 216 is defined as:

> All individuals that were employed by Universal Nissan during the Collective Period who were or are automobile service persons compensated under an unlawful compensation program implemented by Universal Nissan and referred to as "piece-rate" or "flat-rate", in which they performed services on behalf of Universal Nissan and were not compensated their A) statutory minimum wage for all hours worked per week during one (1) or more weeks and/or B) were not compensated time-and-a-half of their regular hourly rate for all hours worked in excess of forty (40) hours.

18.    The precise size and identity of the entire Collective Members is easily ascertainable from Universal Nissan's business records, tax records, and/or employee personnel records.

19.    Universal Nissan compensated Lead Plaintiffs and the Collective Members in the same manner and under the same unlawful employee compensation program, and each has worked in Florida during the Collective Period.

20.    Lead Plaintiffs and the Collective Members are owed straight time and overtime wages under the FLSA.

21.    Lead Plaintiffs maintain the right to modify the Collective Member definition, create additional subclasses or classes, if necessary, and to revise

156 these definitions to maintain cohesive classes which do not require individual

157 inquiry to determine liability.

158 **V.     UNLAWFUL BUSINESS PRACTICES**

159      22.    Universal Nissan has engaged in willful and systematic

160 misconduct by depriving Lead Plaintiffs and all Collective Members of wages

161 they are lawfully entitled to in violation of the FLSA, including its failure to

162 properly reimburse Collective Members for all business expenses including,

163 without limitation, the cost to procure and maintain tools, equipment, and

164 supplies necessary for the discharge of their duties, resulting in failure to pay

165 minimum wages and unpaid wages.

166      23.    Universal Nissan willfully engages in wage compensation

167 misconduct that denies Lead Plaintiffs and Collective Members the right to be

168 compensated for all work hours performed and benefits provided on behalf of

169 Universal Nissan.

170      24.    Universal Nissan is an employer as defined under 29. U.S.C. §

171 203(d), that benefits financially and reputationally from the work performed

172 by Lead Plaintiffs and the Collective Members, such as the maintenance and

173 repair on automobiles.[1]

---

[1] Collective members perform a specialty job integral to Universal Nissan's business given that they are responsible for servicing Nissan vehicles under manufacturer warranties.

25.    Lead Plaintiffs and the Collective Members work under a payment system referred to as "piece-rate" pay or "flat-rate" pay, where employees are paid a fixed rate for each unit produced or service performed ("*flagged hours*"), regardless of the amount of time the employee spent working on the task.

26.    All Nissan authorized dealerships are required to comply with this payment system, which was established by Nissan North America, which is why the impact of its application affects all members of this collective action in the same manner.

27.    Under this payment system, the rate of pay per service varies by the task performed and whether the service is "warranty-paid" or "customer-paid".  The rate of pay is defined directly by Nissan North America to each of its dealerships in its Products Resource Manual published by Nissan North America and updated from time to time as part of its nationwide authorized dealership compliance programs.

28.    Traditionally, this payment system was common with automotive technicians and was initially created as an incentive for their employees to work at a faster pace; in fact, it was quite lucrative for many technicians in previous years before intentionally amending its policies in order to continue compensating employees at a flat-rate or piece-rate system, while forcing them to work many hours over forty hours per week, ultimately reducing the compensation to its employees.

29.    Universal Nissan's misconduct and misuse of this payment system fails to properly compensate employees for a substantial number of hours worked in the day, including time working non-flagged hours for such tasks as training, cleaning the workshop, or prepping tools.

30.    Universal Nissan's willful misuse of the "flat-rate pay" system withholds wages owed to their technicians, thereby resulting in decreased expenses and increased profits for Universal Nissan.

31.    In comparison to other vehicle manufacturers and their respective dealerships, Universal Nissan established additional policies, causing their technicians to suffer a significant amount of unpaid wages over the past several years.

32.    For instance:

a.    Lead Plaintiffs and the Collective Members, are required to perform various unpaid "non-repair" tasks, including, but not limited to cleaning, attending meetings and/or on-site/virtual trainings, traveling to offsite locations in connection with Universal Nissan's business, reviewing service orders, and completing invoices. These tasks comprise a large portion of their "worktime", for which the employees are not paid. Lead Plaintiffs and Collective Members are not compensated for the hours spent conducting "non-piece-rate" or "non-flat-rate" tasks.

b.    The total amount of hours spent "on the job" by Lead Plaintiffs and Collective Members are not documented as required and paystubs denote what purports to be "flagged hours" only, with no supportive information.

c.    Lead Plaintiffs and Collective Members are required to purchase tools and equipment to fulfill their duties as a Universal Nissan service technician. When they purchase these tools and equipment, their weekly rate of pay falls below the required statutory minimum wage to which they are never recompensed.

d.    When Lead Plaintiffs and Collective Members purchase the tools to fulfill their duties for Universal Nissan, they are conferring a benefit onto Universal Nissan to which Universal Nissan accepts. Universal Nissan never pays the value of the benefit back to the employees, therefore retaining an unjust enrichment in the benefit conferred.

33.    Universal Nissan has also established and employed an arbitrary system where services paid by customers directly provides a significantly higher flat-rate pay-out to the Universal Nissan employee conducting the work; on the other end of the spectrum, that same work, but for a customer with a vehicle under warranty (which consists of approximately 80% of Universal Nissan's customer base/service-work as of recent years) pays a *substantially* lower flat-rate pay-out to the employee than if it were to be paid directly by a customer.

34.    There is no difference in the work being performed between "customer-paid" and "warranty-paid" work, other than the rate being paid to the employee.

a.    For example, the flat-rate pay-out to a technician for replacing a transmission in a Nissan Sentra that is paid directly by the customer is eight (8) hours.

b.     When the same transmission is brought in by a customer with the same vehicle, but under a warranty (either manufacturer or an extended warranty), the transmission replacement conducted by the technician will now only pay four (4) hours, with no justification for the significant discrepancy in pay.

c.     This drastic change in the flat-rate paid to the technician is arbitrary and capricious, as there is no difference in the work performed or the time it takes to replace a transmission (for example) in a warranty-paid versus customer-paid vehicle.

35.    "Warranty-paid" work provides a substantially lower payout to the employees than "customer-paid" work because the warranty work constitutes a great majority of the service requested at Universal Nissan.

36.    The disparity between the amount of "warranty-paid" vs. "customer-paid" work has resulted in reduced profit-margins for Universal Nissan.  To claw-back profits, Universal Nissan reduces the pay-out to its employees through the unlawful method described herein.

37.    Consequently, mechanics, technicians, and maintenance personnel did not and are not receiving fair compensation for all hours worked while providing valuable benefits and services to Universal Nissan, for which Universal Nissan receives profits. These invaluable Universal Nissan employees have outstanding unpaid wages[2] owed to them.

---

[2] "Unpaid wages" means the difference between the wages actually paid to an employee and the wages required to be paid to the employee including all compensation for services.

38.    Universal Nissan's employee compensation program violates the Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207, for failure to pay minimum and/or overtime wages for all hours worked, as will be described in Counts I and II of this complaint.

39.    Lead Plaintiffs and the Collective Members are routinely required to purchase, and maintain their own tools, equipment, and supplies necessary for the discharge of their duties for the direct benefit of Universal Nissan.

40.    Universal Nissan has been unjustly enriched through their conduct by failing to reimburse employees for expenses relating to these equipment purchases resulting in profit and benefit for Universal Nissan to the detriment of the employees/Class Members.

41.    Universal Nissan's failure to reimburse Lead Plaintiffs and Collective Members for out-of-pocket expenses resulted in a benefit to the employer, as it decreased the employees' regular wages below the minimum wage resulting in injury to the Lead Plaintiffs and Collective Member.

42.    In other words, by requiring the Lead Plaintiffs and Collective Members to purchase their own tools to complete their duties, the cost of such tools purchased by the employee diminishes the overall compensation of the employee resulting in lower than minimum wage compensation.

43.    By requiring Lead Plaintiffs and the Collective Members to purchase their own tools, Universal Nissan is effectively requiring employees to kick-back their wages to the employer.

44.    Universal Nissan's arbitrary decisions to deduct certain hours from employees' wages is an incomprehensible violation of employment laws and constitutes a kickback for the benefit of Universal Nissan.

45.    As a result of Universal Nissan's misconduct and misuse of the flat rate pay system including failure to adequately compensate employees for hours worked and/or overtime hours, and kickbacks, employees are not compensated in accordance with the requisite minimum wage.

46.    Universal Nissan and its agents/representatives are aware of and materially participated in the implementation of the unfair wage compensation system.

47.    Universal Nissan employs unlawful wage compensation systems to capture more profits and combat shrinking profit margins by underpaying their essential technicians, mechanics, and maintenance personnel and failing to pay them the wages they are legally entitled to for the skilled labor they perform.

48.    This action represents a situation typical of class treatment.

316    49.    Universal Nissan's failure to pay wages for all hours worked by all

317 mechanics, technicians, and maintenance personnel employed by Universal

318 Nissan is uniform throughout its entire business operations.  These employees

319 are also similarly situated due to the application of "piece-rate" and or "flat-

320 rate" pay.

321    50.    Determining liability for violations of the Federal Fair Labor

322 Standards Act, Code of Federal Regulations, and other laws will ensure that

323 all mechanics, technicians, and maintenance personnel of Universal Nissan

324 are fairly and legally compensated under these laws then, now, and in the

325 future.

326 **VI.    BASIC CONDITIONS PRECEDENT ALLEGATIONS**

327    51.    Lead Plaintiffs have engaged the law firm of éclat law, PA to serve as

328 its lead trial counsel and are obligated to compensate these law firms for services

329 rendered in connection with prosecuting the Collective Members rights as alleged

330 herein.

331    52.    All conditions precedent to bring this action have taken place, are

332 futile, expired or were effectively waived.

333

## <u>COUNT I</u>
## VIOLATION OF THE FLSA - MINIMUM WAGES

53.    Lead Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 52 above as if fully set forth herein.

54.    Lead Plaintiffs bring this cause of action to recover unpaid minimum wages owed to Lead Plaintiffs and the Collective Members pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*

55.    This includes failure to pay minimum wage for all hours worked by the Lead Plaintiffs and the Collective Members and includes reductions in the employees' paychecks for the benefit of the employer in which they required employees to purchase tools to perform their work without reimbursement or compensation up to the statutory minimum wage.

56.    Lead Plaintiffs and Collective Members were or continue to be automobile service or maintenance employees (or former-employees) of Universal Nissan —including but not limited to mechanics/technicians and maintenance servicemen as described in more detail earlier in this pleading.

57.    Lead Plaintiffs and the Collective Members consent to sue in this action pursuant to 29 U.S.C. § 216(b); additional potential opt-in Plaintiffs may execute and file forms consenting to "opt in" and joining as Plaintiffs in this collective action.

58.    Lead Plaintiffs and the Collective Members were hired by Universal Nissan in Florida to perform duties as a technician on behalf of Universal Nissan and for Universal Nissan's profit during the Collective Period.

59.    Lead Plaintiffs and the Collective Members were employed by Universal Nissan.

60.    Lead Plaintiffs and the Collective Members were required by Universal Nissan to procure and maintain tools, equipment, and supplies necessary for the discharge of their duties, which reduced the employees' weekly wage to an amount that was below the requisite minimum wage. These tool purchases further reduced the employees' weekly wage to an amount that was below the statutory minimum wage.

61.    By failing to pay minimum wages, Universal Nissan has violated, and continues to violate Sections 206 and 215 of the FLSA.

62.    The conduct described throughout this Complaint constitutes a willful violation of the FLSA.

63.    Universal Nissan knew that it was required to pay its employees at least the requisite minimum wage for all hours worked.

64.    Instead of lawfully paying its employees, Universal Nissan established and maintained systems, policies, and procedures that were

intentionally designed to avoid paying employees their earned wages as detailed in the paragraphs above.

65.     Universal Nissan has engaged in a widespread systematic pattern, policy, and practice of violating the FLSA, as detailed throughout this Complaint. Application of these practices does/did not depend on the personal circumstances of the Lead Plaintiffs or any of the Collective Members. Rather, the same practices which result in the non-payment of minimum wages to Lead Plaintiffs and the Collective Members apply to all Collective Members.

66.     Lead Plaintiffs and the Collective Members are/were entitled to be paid at least minimum wage for all hours worked during the workweek pursuant to FLSA 29 U.S.C. § 206.

67.     Further, when tool and equipment purchases decrease the employees' weekly paycheck below the statutory minimum wage, Lead Plaintiffs and the Collective Members are entitled to reimbursement up to and including the statutory minimum wage.

68.     Universal Nissan violated FLSA 29 U.S.C. § 206 by failing to pay minimum wages, as described above, and caused Lead Plaintiffs and the Collective Members to suffer lost wages and interest thereon.

69.     Lead Plaintiffs and the Collective Members have been required to work eight (8) hours per day, and beyond, without receiving the full compensation for the hours worked.

70.    Due to Universal Nissan's misconduct and misuse of the employee compensation system, Lead Plaintiffs and the Collective Members did not earn wages at the minimum wage rate for all their hours worked during one or more work weeks.

71.    Lead Plaintiffs and the Collective Members were only compensated for "flagged hours", which sufficiently reduced the compensable hours included in their pay-out, effectively lowering their rate of pay in a manner which falls below the federal minimum wage rate.

72.    By way of example, on April 17, 2019, Lead Plaintiffs received a paycheck stating that he worked 13 hours and was paid $416.00 (gross), but worked at least 60 hours, which is $.32 per hour below the federal minimum wage rate of $7.25 per hour for 2019. For this one week, he is owed a total of $19.20 in unpaid federal minimum wages.

73.    Universal Nissan knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay proper minimum wages as compensation with respect to Lead Plaintiffs and the Collective Members.

74.    Universal Nissan knew that Lead Plaintiffs and the Collective Members were owed compensation and that Universal Nissan was required to pay such compensation. However, Universal Nissan failed to do so.

75.   As a result of Universal Nissan's intentional, willful, and unlawful acts in refusing to pay Lead Plaintiffs and the Collective Members, and those similarly situated to them, minimum wage rates per hour worked per workweek in one or more workweeks, Lead Plaintiffs and the Collective Members have suffered damages, and incurred reasonable attorneys' fees and costs as provided in 29 U.S.C. § 216.

76.   As a result of Universal Nissan's willful violation of FLSA § 206, Lead Plaintiffs and the Collective Members are entitled to recover the full amount of any unpaid back wages unlawfully withheld, plus the same amount as liquidated damages as per 29 U.S.C. § 216.

77.   Lead Plaintiffs and the Collective Members are entitled to recover from Universal Nissan their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages or pre-judgment interests, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. §§ 206 and 216.

78.   Because Universal Nissan's violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

79.   Collective Members request designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims

438 in this action by filing individual Consents to Join, and appointing Plaintiffs
439 and their counsel to represent the Collective Action Members.

440
441 **COUNT II**
442 **NISSAN'S VIOLATION OF THE FLSA FOR FAILURE**
443 **TO PAY OVERTIME WAGES**
444

445 80.    Lead Plaintiffs reallege and incorporate by reference the
446 allegations contained in paragraphs 1 through 52 above as if fully set forth
447 herein.

448 81.    Lead Plaintiffs bring this cause of action to recover unpaid
449 overtime wages owed to them pursuant to the Fair Labor Standards Act, 29
450 U.S.C. § 201, *et seq*.

451 82.    Lead Plaintiffs and Collective Members are automobile service or
452 maintenance employees (or former-employees) of Universal Nissan —including
453 but not limited to mechanics/technicians and maintenance servicemen as
454 described and defined earlier in this pleading.

455 83.    All other collective action Plaintiffs were, always relevant to this
456 action, adults residing in Florida. Lead Plaintiffs and the Collective Members
457 consent to sue in this action pursuant to 29 U.S.C. § 216(b); additional potential
458 opt-in Plaintiffs may execute and file forms consenting to "opt in" and joining
459 as Plaintiffs in this collective action.

84.    Lead Plaintiffs and the Collective Members were hired by Universal Nissan dealerships in Florida to perform duties as a technician on behalf of Universal Nissan and for Universal Nissan's profit during the Collective Period.

85.    Lead Plaintiffs and the Collective Members were employed by Universal Nissan.

86.    By failing to pay overtime wages, Universal Nissan has violated and continues to violate the FLSA sections 207 and 215.

87.    The conduct described throughout this Complaint and above constitutes a willful violation of the FLSA.

88.    Universal Nissan knew that it was required to pay its employees the requisite overtime for all overtime hours worked.

89.    Instead of lawfully paying its employees, Universal Nissan established and maintained systems, policies, and procedures that were intentionally designed to avoid paying employees their earned wages as detailed in the paragraphs above.

90.    Universal Nissan has engaged in a widespread systematic pattern, policy, and practice of violating the FLSA, as detailed throughout this Complaint.

91.    Application of these practices does/did not depend on the personal circumstances of the Lead Plaintiffs and the Collective Members. Rather, the

481     same practices which result in the non-payment of overtime wages to Lead

482     Plaintiffs and the Collective Members apply to all Collective Action Members.

483          92.    Lead Plaintiffs and the Collective Members are entitled to be paid

484     overtime at a rate not less than one and one-half times their regular rate for

485     all hours worked more than forty hours per week pursuant to FLSA 29 U.S.C.

486     § 207.

487          93.    Universal Nissan violated the FLSA, 29 U.S.C. § 207, by failing to

488     pay Lead Plaintiffs and the Collective Members overtime wages at a rate of

489     time and a half of their regular pay during the weeks that they worked more

490     than forty (40) hours, as described in the paragraphs above, and caused Lead

491     Plaintiffs and the Collective Members to suffer lost wages and interest thereon.

492          94.    Lead Plaintiffs and the Collective Members were only

493     compensated for "flagged hours", which sufficiently reduced the compensable

494     hours included in their pay-out. Furthermore, "flagged hours" were the only

495     hours that were counted for purposes of determining whether Collective

496     Members were entitled to overtime, rather than the actual hours worked by

497     the Collective Members.

498          95.    Therefore, Lead Plaintiffs and the Collective Members frequently

499     worked over forty hours per week but did not receive the required overtime for

500     every hour worked more than forty (40) hours per week, since flagged hours

501     were the only hours that were counted for purposes of overtime.

96.     By way of example, on January 31, 2020, Lead Plaintiffs received a paycheck stating that he worked 48 hours and was paid $1,536.00 (gross). He was paid at his straight rate for each of these hours. Under 29 U.S.C. § 207, Lead Plaintiffs should have been paid at a rate not less than one and one-half times the regular rate at which he is employed for every hour in excess of forty (40) hours, which he was not. For this one week, he is owed a total of $384 in unpaid overtime wages.

97.     Moreover, despite working more than forty (40) hours per week, Universal Nissan failed to pay Collective Members overtime compensation at the appropriate rate.

98.     Universal Nissan knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay Collective Members the required overtime wages.

99.     Universal Nissan knew that Lead Plaintiffs and the Collective Members were owed compensation and that Universal Nissan was required to pay such compensation. However, Universal Nissan failed to do so.

100.   As a result of Universal Nissan's intentional, willful, and unlawful acts in refusing to pay Lead Plaintiffs and the Collective Members, and those similarly situated to them, overtime wage rates per hour worked per workweek in one or more workweeks, Lead Plaintiffs and the Collective Members, and

those similarly situated to them, have suffered damages, and incurred reasonable attorneys' fees and costs as provided in 29 U.S.C. § 216.

101.  As a result of Universal Nissan's willful violation of FLSA § 207, Lead Plaintiffs and the Collective Members are entitled to recover the full amount of any unpaid back wages unlawfully withheld, plus the same amount as liquidated damages or pre-judgement interest as per 29 U.S.C. § 216. They are further entitled to reasonable attorneys' fees, costs, and disbursements.

102.  Because Universal Nissan's violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

103.  Lead Plaintiffs and the Collective Members request designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join, and appointing Plaintiffs and their counsel to represent the Collective Action Members.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Lead Plaintiffs and the Collective Members respectfully request that judgment be entered in their favor, against Universal Nissan, and:

a.      Certification and acknowledgement of the Collective Action and appointing the Lead Plaintiffs and trial counsel the opportunity to represent the Collective Members.

b.      Awarding Lead Plaintiffs and the Collective Members his/their unpaid wages in the amount due to him/them for Lead Plaintiffs and the Collective Members, time worked in each work week at minimum wage, any owed overtime wages, and any other relief provided for under law.

c.      Awarding Lead Plaintiffs and the Collective Members liquidated damages as permitted by law.

d.      Awarding Lead Plaintiffs and the Collective Members reasonable attorneys' fees and costs and expenses of the litigation pursuant to the FLSA.

e.      Awarding Lead Plaintiffs and the Collective Members punitive damages and/or pre-judgment interest as permitted by law.

f.      Granting Lead Plaintiffs and the Collective Members an Order, on an expedited basis, allowing them to send notice of this action as a collective action pursuant to 29 U.S.C. § 216(b) to those similarly situated Collective Action Members; and

g.      Granting any other further relief, the Court deems just and proper.

## JURY TRIAL DEMANDED

Class Members respectfully demand a trial by jury on all issues so triable.

éclat Law, PA

_____

Kevin K. Ross-Andino, # 66214
kevin.ross@eclatlaw.com
307 Cranes Roost Boulevard # 2010
Altamonte Springs, Florida 32701
Main Line: (407) 636-7004

*Lead Trial Counsel to the Plaintiffs and each Class Member*